**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STEEL, PAPER and FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL and SERVICE | ) | |
| WORKERS' INTERNATIONAL UNION, | ) | |
| and its LOCAL 13-587, a labor organization, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-363-GKF-TLW |
| | ) | |
| CONOCOPHILLIPS COMPANY, | ) | |
| a foreign corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter comes before the Court on the Motion for Summary Judgment (Dkt. #27), filed

by defendant ConocoPhillips Company ("Conoco" or the "Company").

Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial

and Service Workers' International Union, and its Local 13-587 (the "Union") bring this action

under § 301 of the Labor Management Relations Act ("LMRA") codified at 29 U.S.C. § 185. The

Union seeks to compel arbitration of grievances it had filed with Conoco based on alleged violations

of the parties' Collective Bargaining Agreements ("CBAs"). There are six grievances that remain

at issue in this case, identified as follows: R03-14, R05-14, R03-01, R04-18, T03-02, and T03-08.

Grievances that begin with "T" allege violations of the Technical CBA ("T-CBA") and those that

begin with "R" allege violations of the Refining CBA ("R-CBA").

Conoco claims that it is entitled to summary judgment on two independent grounds. First,

Conoco argues that all six grievances are barred by the six month statute of limitations contained

in § 10(b) of the National Labor Relations Act ("NLRA"), codified at 29 U.S.C. § 160(b).

Alternatively, Conoco argues that the six grievances are substantively unarbitrable under the terms

of the CBA.  Because this Court finds that the grievances are time-barred under the statute of

limitations, it need not reach the arbitrability question.

## I.  Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A court must examine the factual

record in the light most favorable to the party opposing summary judgment.  *Wolf v. Prudential Ins.*

*Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). The movant must meet the initial burden of showing

the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing to

specific facts in the record "showing a genuine issue for trial as to those dispositive matters for

which it carries the burden of proof." *Id.*

## II.  Material Facts

1.      Conoco's Ponca City Refinery processes domestic and international crude oils delivered by

pipeline from throughout North America. The Union is the collective-bargaining representative for

a majority of the production and maintenance employees at the Refinery. These employees are either

laborers or are assigned a number based upon seniority in a particular progression or craft. (Dkt.

#27, p.6-7, undisputed; *see* Dkt. #37).

2.      The CBAs contain nearly identical three-step grievance procedures for settling disputes

between Conoco and the Union. At step one the grievance is dealt with by the immediate supervisor

of the aggrieved party. (Dkt. #37, p.2)  At step two, the grievance is taken to the "second level of supervision or his designee." (*Id.*).  If the parties cannot resolve the grievance through agreement after the first two steps, either party may submit the grievance to step three, arbitration. (Dkt. #27, p.7; undisputed, *see* Dkt. #37).

3.      At step three, a party submitting an issue for arbitration must notify the other party. (Dkt. #27, Exh. B, p.39-40, Exh. C, p.21-22, uncontested; *see* Dkt. #37).  Under the T-CBA parties must then mutually select an arbiter or jointly refer the matter to the Federal Mediation and Conciliation Service (FMCS). (Dkt. #27, Exh. C, p.21-22, uncontested; *see* Dkt. #37).  Under the R-CBA the moving party must go directly to the FMCS to request arbitrators be appointed. (Dkt. #27, Exh. B, p.39-40, uncontested; *see* Dkt. #37).  A step three submission to arbitration does not require a response from the non-moving party under either agreement. (*See* Dkt. #27, Exh. B, p.39-40, Exh. C, p.21-22, uncontested; *see* Dkt. #37).

4.      "Only differences arising between the Union and the Company relating to interpretation or performance of this Agreement which cannot be adjusted by mutual agreement and have gone through the grievance procedure are arbitrable, except as otherwise provided in [the Agreement]" (Dkt. #27, Exh. B, p.40, Exh. C, p.22, Dkt. #27, p.7, undisputed; *see* Dkt. #37).

5.      To be timely, a grievance must be brought to the attention of the employee's immediate supervisor within 10 days of the initial incident. (Dkt. #27, Exh. B, p.39, undisputed; *see* Dkt. #37).  If the grievance is not timely raised, it does not begin the three step process, and is thus not arbitrable. (*See Id.; see also* Dkt. #27, p.7, undisputed).

6.      There are "Management's Rights" clauses in Article 10 of the T-CBA and Article 11 of the R-CBA.  (Dkt. #27, p.7-8;  Dkt. #37, p.2).  Per the terms of the CBAs, any grievances that arise under these articles are not arbitrable. (*Id.*).

7.    **Grievance T03-02** was lodged on May 12, 2003 and denied at step one on May 23, 2003. (Dkt. #27, p.8-9; Dkt. #37, p.4).  Conoco did not reply to the grievance at step two. (Dkt. #37, p.4). On July 7, 2003, Conoco responded by letter to the Union's step three submission to arbitration by stating: "this grievance is denied and non-arbitrable on the basis of jurisdiction, timeliness and Article 10, Management's Rights." (Dkt. #27, Ex. D, p.8, undisputed; *see* Dkt. #37).  At no time thereafter did Conoco agree to arbitrate T03-02 or express any willingness to reconsider its position that the grievance was not arbitrable. (Dkt. #27, p.8-9, undisputed; *see* Dkt. #37).

8.    **Grievance T03-08** was filed on November 10, 2003. (Dkt. #37, p.5).  When the union requested arbitration at step three, Conoco sent a letter on January 8, 2004 saying that this grievance, as presented to Conoco at that time, involved Article 10 Management's Rights. (Dkt. #27, Ex. F, p.14 , undisputed; *see* Dkt. #37).  Therefore "acting on these rights is not arbitrable and the Company will not arbitrate these actions." (*Id.*).  That letter also stated that, "if the union is seeking arbitration over alleged violations of [other provisions] not covered in our discussions around article 10 or Article 20-6, please provide us with the specific claim of a violation so that we may respond and consider whether or not these new issues are right for arbitration." (*Id.*, undisputed; *see* Dkt. #37).  There was no union response to that request. (*See* Dkt. #27, Ex. F).  Plaintiffs contend that Conoco's letter was not actually a refusal to arbitrate. (Dkt. #37, p.5).  Viewing this letter in the light most favorable to the plaintiffs, the plain language of the letter articulates a refusal to arbitrate current claims and a request for any new claims to determine their arbitrability.  At no time thereafter did Conoco agree to arbitrate T03-08 or express any willingness to reconsider its position that T03-08 was not arbitrable.  (Dkt. #27, p.9-10;  Dkt. #37, p.5-6).

9.    **Grievance R04-18** was filed on July 14, 2004. (Dkt. #27, p.11; Dkt. #37, p.7).  Conoco responded to the union's step three demand for arbitration by a letter which jointly addressed

4

grievances R04-18 and R04-22 on January 25, 2005. (*Id.*).  The letter stated: "the Company cannot

agree to arbitrate Gr. 04-18 (operations philosophy) unless the parties narrow the scope of the

grievance. As indicated during our meetings . . . and the associated grievance correspondence, many

of the issues involved arise under Article 11, Management's Rights. As you know, such issues are

subject to the grievance procedure but cannot be submitted to arbitration." (Dkt. # 27, Exh. H, p.9,

undisputed; see Dkt. #37). The letter held open the possibility that it was "available to discuss any

aspects of this grievance for the purpose of defining the issue(s) to include in an arbitration hearing."

(Dkt. #27, Exh. H, p.9).    The Union has not disputed Conoco's assertion that the parties never

agreed that any issues were arbitrable, nor has the Union demonstrated it attempted to "narrow the

scope of the grievance" to make it arbitrable. (*See* Dkt. #37). There is no indication in the record that

the union pursued further discussion or revision of its grievance until June 16, 2006 when the union

renewed its demand for arbitration but did not alter the grievance. (*See* Dkt. #37, p.8; Dkt. #37-3,

p.4).  At no time thereafter did Conoco agree to arbitrate R04-18 or express any willingness to

reconsider its position that R04-18 was not arbitrable. (Dkt. #27, p.11, undisputed; *see* Dkt. #37).

10.        **Grievance R03-01** was filed on January 2, 2003. (Dkt. #27, p.10; Dkt. #37, p.6).  At step

one, Conoco denied that the grievance was arbitrable by letter stating that the grievance "constitutes

a grievance over Management's Rights under Article 11 of the CBA and as such it is grievable but

not arbitrable." (Dkt. #27, Exh. G, p.4, undisputed; *see* Dkt. #37).  The Union took the grievance to

step two, which Conoco denied by stating that "[n]othing... has changed the issues." (Dkt. #27, Exh.

G, p.6, undisputed; see Dkt. #37).  Conoco did not respond to the union's request for arbitration

dated February 17, 2003. (Dkt. #27, p.10, undisputed; *see* Dkt. #37).  On June 27, 2003, the Union

filed a Charge with the National Labor Relations Board ("NLRB"). (Dkt. #27, Exh. G, p.8-9,

undisputed; *see* Dkt. #37).  As the "Basis of the Charge," the Union alleged: "Company refuses to

arbitrate grievance . . ." (*Id.*).   The NLRB subsequently denied the complaint, citing insufficient evidence that Conoco violated the NLRA. (*Id.*).  At no time thereafter did Conoco agree to arbitrate R03-01 or express any willingness to reconsider its position that R03-01 was not arbitrable. (Dkt. #27, p.10-11, undisputed; *see* Dkt. #37).

11.      **Grievance R05-14** was filed on June 15, 2005. (Dkt. #27, p.13; Dkt. #37, p.10). At step one, Conoco denied the grievance by letter on June 21, 2005. (Dkt. #27, Exh. L, p.4, undisputed; *see* Dkt. #37).   This letter did not specifically deny arbitration, but it rejected the grievance because it implicated Article 11 of the CBA, the management's rights clause. (*Id.*).   Article 11 management's rights issues are not arbitrable under the contract. (Dkt. #27, p.7-8;  Dkt. #37, p.2).   At step two Conoco again denied the claim by letter on July 1, 2005, stating that the claim arose  under Article 11. (Dkt. #27, Exh. L, p.8, undisputed; *see* Dkt. #37).  Neither denial explicitly refused arbitration, but both stated that the grievance was denied under Article 11.   (Dkt. #27, Exh. L, p.6, 8, undisputed; *see* Dkt. #37).  At no time thereafter did Conoco agree to arbitrate R05-14 or express any willingness to reconsider its position. (Dkt. # 27, p.13-14, undisputed; *see* Dkt. #37, p.10-11).

12.      **Grievance R03-14** was filed on July 20, 2003. (Dkt. #27, p.15; Dkt. #37, p.12).   This grievance was filed in response to an incident that took place on June 1, 2003. (Dkt. #27, p. 14-15, undisputed; Dkt. #37, p. 12-13).  On August 5, 2003, Conoco denied the step one grievance request as "untimely." (*Id.*).  In an August 15, 2003, letter Conoco again denied the grievance at step two, stating "the grievance is not timely." (Dkt. #27, Exh. N, p.4, undisputed; *see* Dkt. #37). Although neither of Conoco's letters explicitly used the term "arbitrate," (*see* Dkt. #27, Exh. N, p.2, 4, undisputed; *see* Dkt. #37) grievances which are not timely raised do not trigger the three step arbitration process and are thus not arbitrable under the CBAs. (Dkt. #27, Exh. B, p.39, undisputed; *see* Dkt. #37).   To be timely a grievance must be brought to the attention of the aggrieved's

immediate supervisor within 10 days of the incident. (*Id.*). On August 29 and September 5, 2003, the union sent formal requests to arbitrate at step three, and Conoco did not respond. (Dkt. #27, Exh. N, p. 5-6, undisputed; Dkt. #37, p.12). At no time thereafter did the company agree with the union to arbitrate or reconsider its position. (Dkt. #27, p.15, undisputed; *see* Dkt. #37).

### III.  Applicable Statute of Limitations

Conoco contends that the applicable statute of limitations for a suit between an employer and a labor organization is six months. (Dkt. #27, p.16). Plaintiff argues that laches, rather than a statute of limitations, is the proper defense for a case of this nature. (Dkt. #37, p.14). Moreover, plaintiff asserts that any laches defense should properly be raised before the arbitrator, not the federal court. (*Id.*).

The parties agree that Congress provided no federal statute of limitations for § 301 actions for litigation between an employer and a labor organization. (Dkt. #37, p.14; Dkt. 27, p.17; *See Garcia v. Eidal Int'l Corp.*, 808 F.2d 717, 719 (10th Cir. 1986)). Neither the Tenth Circuit nor the Supreme Court have ruled on the proper statute of limitations for pure § 301 actions. Where no federal statute of limitations is legislatively enacted, as is the case here, courts must "'borrow" the most suitable statute or other rule of timeliness from another source. *DelCostello v. Int'l Broth. Of Teamsters*, 462 U.S. 151, 159 (1983). While Courts generally apply the most closely analogous statute of limitations under state law, the *DelCostello* Court explained that "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law."

7

*Id.* at 171-72.

Every circuit court opinion brought to this Court's attention has unanimously applied the six month statute of limitations found in NLRA §10(b) to claims to compel arbitration under the LMRA.[1]  The circuits that have adopted the six-month statute of limitations include every circuit but the Tenth and Fourth.  The great weight of authority from other circuits supports the important federal interests underlying this action.  A suit to compel arbitration "seeks to vindicate the vital interest of federal labor law in maintaining 'the system of industrial self-government. . . . with its heavy emphasis on grievance, arbitration, and the 'law of the shop.''" *Western Electric*, 860 F.2d at 1141 (quoting *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 63-64 (1981)).  As such, "actions to compel arbitration appear closely analogous to suits over unfair labor practices which are directly subject to the proscription of section 10(b)." *Id.*  The First Circuit echoed the Supreme Court, explaining that in labor law, "we think it markedly undesirable for the arbitral process to be "suspended in limbo for long periods . . ." *Id.* at 1141 (quoting *United Parcel Service,* 451 U.S. at 64).  The Fifth Circuit's statement on this point is especially succinct: "When arbitration has not yet occurred, however, rights remain unsettled, and therefore the shorter six-month period is appropriate for a suit to compel arbitration." *A.P. Green Refractories,* 895 F.2d at 1055.

---

[1]*See Commc'ns Workers of Am. V. Am. Telephone & Telegraph Co.*, 10 F.3d 887, 889 (D.C. Cir. 1993);  *Local No. 88 United Food & Commercial Workers Union, AFL-CIO, CLC v. Middendorf Meat Co.*, 991 F.2d 801 (8th Cir. 1993) (Unpublished); *United Food & commercial Workers Local 100A, AFL-CIO & CLC v. John Hofmeister & Son, Inc.*, 950 F.3d 1340 (7th Cir. 1991); *Aluminum, Brick and Glassworkers Intern. Union Local 674 v. A.P. Green Refractories, Inc.*, 895 F.2d 1053 (5th Cir. 1990); *Communications Workers of America, AFL-CIO v. Western Elec. Co., Inc.*, 860 F.2d 1137 (1st Cir. 1988); *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232 (6th Cir. 1987); *Associated Brick Mason Contractors of Greater N.Y., Inc. v. Harrington*, 820 F.2d 31 (2nd Cir. 1987); *International Ass'n of Machinists and Aerospace Workers, Local Lodge No. 1688 v. Allied*, 786 F.2d 1561 (11th Cir. 1986); *Teamsters Union Local 315 v. Great W. Chem. Co.,* 781 F.2d 764 (9th Cir. 1986); *Fed'n of Westinghouse Indep. Salaried Unions v. Westinghouse Elec. Corp.,* 736 F.2d 896 (3d Cir. 1984)).

Plaintiff's contention that laches is the only permissible timeliness defense for a case that seeks to compel arbitration can be quickly disposed of.  The only case law plaintiff cites for this proposition is *Int'l Union of Operating Eng'rs v. Flair Builders, Inc.*, 406 U.S. 487 (1972).  *Flair* merely holds that laches is an available defense, not that it is the only available defense, in motions to compel arbitration.  *Flair* did not even mention the possibility of a statute of limitations defense, much less rule it out.  The case was decided years before the National Labor Relations Act at issue in this case was even passed.  Moreover, the Court in *Flair* ruled on a very expansive contract that called for arbitration of "any difference" between the parties.  The Court held that under those specific facts that "[h]aving agreed to the broad clause, the company is obliged to submit its laches defense, even if 'extrinsic,' to the arbitral process." *Id.*  Nonetheless, the Court held that "nothing we say here diminishes the responsibility of a court to determine whether a union and employer have agreed to arbitration. That issue, as well as the scope of the arbitration clause, remains a matter for judicial decision." *Id.*  Plaintiffs' arguments that a statute of limitations defense is improper and that the issue should be decided by the arbiter are against the great weight of persuasive opinions from other circuits (*see, supra*, fn.1) and unsupported by the Court in *Flair*. *See Id.*

For these reasons, the Court agrees with the weight of concurring authority that a MLRA §301 suit to compel arbitration is limited by the six month statute of limitations from § 10(b) of the NLRA.  The scope of the arbitration agreement is also an issue for decision by this Court, not the arbitrator.  This does not end the statute of limitations inquiry, however, as there remains the question of when the claims accrued.

### IV. Timeliness of the Union's Claims

9

Although the parties did not bring any controlling authority to this Court's attention, they agree that the statute of limitations begins to run when one party "clearly refuses" to arbitrate the grievance. (Dkt. #27, p.20, citing *Western Elec.*, 860 F.2d at 1144-45; Dkt. #37, p.16).  Several other circuits have adopted this (or a substantially similar) standard: "the cause of action to compel arbitration under a collective bargaining agreement accrues when one party clearly refuses to arbitrate the dispute." *A.P. Green Refractories, Inc.*, 895 F.2d at 1055 (5th Cir. 1990); *Westinghouse*, 736 F.2d at 902 (3rd Cir. 1984) (question is when employer "finally refused arbitration"); *Teamsters Union Local 315*, 781 F.2d at 769 (9th Cir. 1986) (time begins to run "when it was made clear by the Employer to the Union that the Employer would not submit the matter to arbitration.").  Given the weight of authority, and the parties' agreement, this Court will apply a standard of "clear" denial of arbitrability.

Neither party has presented any controlling authority to determine what constitutes a clear refusal or final denial of arbitration.  Defendant argues that a party need not "utter the magic words 'we refuse to arbitrate this dispute'" to prove it unequivocally refused to arbitrate, and the court should consider other unambiguous communications and conduct as well. *In re Diamond D Constr. Corp. v. Int'l Union of Operating Eng'rs*, 15 F.Supp. 2d 274, 289 (W.D. N.Y. 1998); *Indep. Coca-Cola Emp. Union of Lake Charles v. Coca-Cola Bottling Co.*, 114 Fed. App'x. 137, 141-42 (8th Cir. 2004) (unpublished).  The First Circuit considered this issue in *Western Electric*, where the employer told the Union at least four separate times that it would not arbitrate the matter. 860 F.2d at 1144.  The court found that as soon as the employer had first "unequivocally spurn[ed] arbitration" that the "goal of grievance resolution is . . . best served by forcing the union to sue for arbitration within a reasonable period of time thereafter." *Id.* at 1144-45.  The court reasoned that

the goal of the short statute of limitations was to prevent the threat of arbitration "dangling, unresolved" for an extended period of time. *Id.*

Defendant urges the Court to adopt the reasoning of *Coca-Cola*, that "when one party tells another that it has no viable cause of action because any claims that it might have had are now time-barred, that party has unequivocally refused to arbitrate. Although Coca-Cola might have chosen its words more carefully, there is no need for a party refusing to arbitrate to use that term (or any other talismanic words) to express its refusal to arbitrate." 114 Fed. App'x at 141 (5th Cir. 2004); *see also Middendorf Meat Co.*, 991 F.2d 801, *2 (8th Cir.) (holding that the claim accrued after the employer denied a request for arbitration as untimely under the collective bargaining agreement). The Fifth Circuit also relied upon the fact that they "perceive no doubt or equivocation in Coca-Cola's position that it did not intend to arbitrate claims that the Union and Etienne could no longer pursue by virtue of the statute of limitations." *Id.* at 142. The ultimate question of whether a party has clearly refused to arbitrate, however, "turns on the particular facts of each case." *Id.*

Plaintiff asserts in its Response to the Motion for Summary Judgment (Dkt. #37), with no case law in support, that a refusal to arbitrate cannot be "clear" or "final" under the CBAs until a formal request for arbitration is denied at step three. (*See* Dkt.#37, p.16). In a Notice of Supplemental Authority plaintiff provided two cases to argue that arbitration cannot be clearly refused until the grievance process is completed or breaks down to the disadvantage of one party. *See Teamsters Local Union 688 v. Unisource Worldwide*, 157 F.Supp. 2d 1081 (E.D. Mo. Aug. 2, 2001); *Commc'n Workers of Am. v. Sw Bell Tel. Co.*, 2006 WL 3408409 (W.D. Mo. Nov. 27, 2006). The *Unisource* court concluded that under the facts of that case, the company's rejection of arbitration did not trigger the statute of limitations until the Union submitted a formal demand for arbitration. 157 F.Supp. 2d at 1083. The second case, *Bell Telephone*, involves a grievance which

11

actually went through arbitration and the legal reasoning tracks the language of *Unisource* almost

verbatim. 2006 WL 3408409.

The courts in these two cases faced potentially conflicting directives from the Eighth Circuit

regarding the accrual time for actions to compel arbitration.  On one hand, "[a] cause of action to

compel arbitration 'accrues when the grievance procedure is exhausted or otherwise breaks down

to the employee's disadvantage[.]' " *Id.* at 1082-83 (quoting *Cook v. Columbian Chem. Co.*, 997

F.2d 1239, 1241 (8th Cir.1993)).  On the other hand, "[a] cause of action to compel arbitration under

a collective bargaining agreement accrues when one party clearly articulates its refusal to arbitrate

the dispute." *Id.* (quoting *United Food and Comm. Workers Union Local No. 88, AFL-CIO, CLC

v. Middendorf Meat Co.*, 794 F.Supp. 328, 332 (E.D.  Mo. 1992), aff'd, 991 F.2d 801 (8th

Cir.1993)).  This Court finds that the two Eighth Circuit rules are not necessarily in tension: a clear

refusal of arbitration certainly occurs after a formal rejection of arbitration at the conclusion of the

grievance process, but that does not necessarily mean it is impossible for a clear refusal of

arbitration to occur during the course of the grievance process.[2]  Both Missouri district courts found

under their respective facts that a cause of action to compel arbitration did not accrue until a formal

rejection at the conclusion of the grievance process.  As discussed below, however, these two cases

are factually and legally distinct from the current situation in several ways.

This Court finds that the holding of the *Diamond* court (15 F.Supp. 2d at 289 (W.D. N.Y.

1998)) is better suited to this case.  It held that: "[g]iven the repeatedly stated public interest in a

---

[2]The court in *Unisource* implicitly acknowledged that the two rules it examined were not inherently in
tension, and that neither one was controlling precedent. *Id.* ("The Court concludes that *the better
interpretation* of the principles of *United Rubber* and *United Food* yields the conclusion that the
complaint was timely filed." (emphasis added)).  It relied on no other source of law for its ruling, and the
Union cites no other sources of law to this Court for the position that these views of the law must be in
conflict.

prompt resolution of labor disputes, this court believes that the unequivocal refusal standard does

not turn on whether the party resisting arbitration has filed a petition to stay arbitration or has uttered

the magic words 'we refuse to arbitrate this dispute.'" *Diamond,* 15 F.Supp. 2d at 289.  Thus the

determination of when a cause of action accrued for each grievance will be a fact-dependant inquiry

into whether Conoco communicated a "clear refusal" to arbitrate the grievance and, if so, when that

communication occurred.

## A. Grievances Refused as Non-Arbitrable at Step Three

### T03-02

On May 23, 2003, Conoco denied the Union's grievance at step one. This letter stated,

"[m]anagement's right to move work is covered in Article 10 Management's Rights and in the side

letters of agreement on job security and successorship. Grievances over management's rights are not

subject to arbitration. Therefore, it is our position that this grievance is denied and non-arbitrable

on the basis of jurisdiction, timeliness and Article 10, Management's Rights." (Dkt. #27, Exh. D,

p.4, undisputed; see Dkt. #37).   When the union eventually attempted to submit the dispute to

arbitration at step three, Conoco responded on July 7, 2003, stating, "[c]onsistent with the

Company's Step 1 Response, dated May 23, 2003, this grievance is denied and non-arbitrable on

the basis of jurisdiction, timeliness and Article 10, Management's Rights."  (Dkt. #27, Exh. D, p.8,

undisputed; see Dkt. #37).  Under either party's interpretation of the clear refusal rule, this explicit

step three refusal to arbitrate would start the statute of limitations running.  Thus the statute of

limitations began to run no later than the Union's receipt of the July 7, 2003 response.[3]  This action

was not filed until July 14, 2006. T03-02  is time barred.

## T03-08

On December 22, 2003, the Union submitted the grievance for arbitration.  Conoco sent a

letter on January 8, 2004, in response to the Union's step three request to arbitrate, reiterating that

this grievance involved Article 10 Management's Rights, and thus, "the Company will not arbitrate

these actions." (Dkt. #27, Exh. F, p.14).  Under either party's interpretation of the clear refusal rule,

this explicit step three refusal to arbitrate would start the statute of limitations running. The statute

of limitations began to run on the Union's receipt of the January 8, 2004, letter.  This action was not

filed until July 14, 2006.  T03-08 is barred by the six-month statute of limitations.

## R04-18

Responding to the Union's step three arbitration demand, Conoco sent a letter on January

25, 2005, stating Conoco refused to arbitrate grievance R04-18 as written on the grounds that it was

a Management's Rights issue. (Dkt. #27, p.11, undisputed; *see* Dkt. #37, p.7-8).  Conoco was

unequivocal in its refusal to arbitrate Management's Rights issues, and the Union has presented no

evidence of any equivocation.   After this clear refusal to arbitrate the grievance at stage three, the

---

[3] The Union argues that when it sent letters to Conoco in June of 2006 (just one month before filing this action) again requesting arbitration as to each grievance, that it renewed the statute of limitations at that time. (Dkt. #37, p.18).  Conoco contends its refusal to arbitrate never wavered and the Union may not extend the statute of limitations to revive expired claims by simply re-sending demands to arbitrate. (Dkt. #40, p.3). Conoco admits that there is often a delay between step three and actual arbitration while grievances are queued up for arbitration, but that this only applies to grievances that it had agreed to arbitrate. (Dkt. #40, p.4-5).  The Union has failed to submit evidence to the contrary in its briefs or at oral argument. If plaintiff is correct, it could resuscitate a claim for arbitration that had been clearly refused years before the filing of an action.  This Court concludes that the June 2006 letters cannot resurrect claims, and have no bearing on the clear refusal determination in this case.

statute of limitations began to run on the Union's receipt of the January 25, 2005, letter.  This action

was not filed until July 14, 2006.  R04-18 is time barred.

## B. Grievances Refused as Non-Arbitrable at Step One and Two

### R03-01

In response to the Union's step one grievance notice, Conoco sent a letter dated January 15,

2003, stating, "Since this grievance is over . . . Management's Rights under Article 11 of the CBA

and as such it is grievable but not arbitrable." (Dkt. #27, Exh. G, p.4).  At stage two, Conoco

reiterated by letter on January 31, 2003 that "[n]othing . . . has changed the issues." (Dkt. #27, Exh.

G, p.6). On February 17, 2003, the Union advanced the grievance to step three and Conoco did not

respond. (Dkt. #27, p.10).  Unlike steps one and two, the terms of the CBA do not require a response

from the Company at step three. (Dkt. #27, Exh. B, p.39-40, Exh. C, p.21-22, uncontested; *see* Dkt.

#37).  The Union demonstrated its knowledge that a step three response from Conoco was not

necessary roughly four and a half months later on June 27, 2003, when it filed a Charge with the

NLRB.[4] (Dkt. #27, Exh. G, p.8-9).  As the "Basis of the Charge," the Union alleged: "Company

refuses to arbitrate grievance . . ." (*Id.*).  By its own words, the Union knew that arbitration had been

refused.  The statute of limitations began to run on the Union's receipt of the January 31, 2003,

letter. This action was not filed until July 14, 2006. Accordingly, R03-01 is time barred.

## C. Grievances Denied Without Using the Term "Arbitration"

### R05-14

---

[4]The NLRB subsequently denied the complaint, citing insufficient evidence that Conoco violated
the NLRA. (Dkt. #27, Exh. G).

Conoco denied the grievance at steps one and two by letters on June 21, 2005, and July 1, 2005. (Dkt. #27, Exh. L, p.4,8).  Both letters stated that the grievances were denied as arising under Article 11 without using the word "arbitration." (*Id.*).  Nonetheless, both parties agree that Article 11 Management's Rights issues are not subject to arbitration under the terms of the CBA. (Dkt. #27, p.7-8, Dkt. #37, p.2).  On July 14, 2005, the Union sent a request to arbitrate at step three, but this time Conoco did not respond. (Dkt. #27, p.25).

To refuse arbitration clearly, Conoco need not use any magical or talismanic words. *See Diamond*, 15 F.Supp.2d at 289;  *Coca-Cola*, 114 Fed. App'x. at 141-42.  Again, the parties are in agreement that under the CBA Article 11 Management's Rights issues are not arbitrable. (Dkt. #27, p.7-8, Dkt. #37, p.2).  When the grievance was denied as arising under Article 11, the Union does not dispute that it knew the implication of that denial: Conoco was claiming that the grievance was not arbitrable.  Conoco told the Union twice that the grievance was governed by the Article 11 Management's Rights clause.  The Union cannot realistically claim that it did not have clear knowledge that Conoco did not intend to arbitrate the dispute even after Conoco did not respond to the step three submission for arbitration.  In R3-01, discussed supra, the union waited only approximately four and a half months after receiving no response to its step three arbitration submission to file a complaint with the NLRB that Conoco had refused to arbitrate.  Because the terms of the contract do not require a response to a submission to arbitration at step three, and because the Union demonstrated by its actions in R3-01 that it knew Conoco had refused to arbitrate without ever responding at step three, the Union cannot now successfully claim that Conoco had not clearly refused to arbitrate on these grounds.  The Union waited exactly one year from submitting this grievance to arbitration before filing the instant lawsuit; it knew and/or had reason to know (as

16

evidenced by its NLRB complaint) that Conoco had refused to arbitrate long before it filed its

complaint in this action. Thus, although Conoco did not use the term "arbitrate," under the specific

facts of this case, given the language of the CBA and the history of behavior between the parties,

Conoco clearly refused to arbitrate when it communicated to the Union that this grievance was

governed by Article 11 of the CBA.

Relying on *Unisource* and *Bell Telephone*, the Union argues that "[a] cause of action to

compel arbitration 'accrues when the grievance procedure is exhausted or otherwise breaks down

to the employee's disadvantage[.]'" 157 F.Supp. 2d at 1082-83 (quoting *Cook v. Columbian Chem.

Co.*, 997 F.2d 1239, 1241 (8th Cir.1993)).[5] The Court has previously discussed, supra, why the

"clear refusal" rule should guide the inquiry in this case. However, even if the rule from *Unisource*

is applied, the claim is time barred. Because the CBAs do not require a response at step three, the

grievance process should be considered exhausted when the Union moved for arbitration, or at the

latest when Conoco did not respond within a reasonable period of time thereafter. The Union moved

for arbitration on June 14, 2005, a full year before filing this law suit and well outside the six month

statute of limitations. The grievance procedure also "[broke] down to the [union's] disadvantage,"

at the latest, when Conoco did not respond to the Union's step three submission for arbitration.

Finally, the Union would have to have known, as it did before in R03-01, that when Conoco had

---

[5]These cases can also be distinguished on their facts. For example, in *Unisource*, the company sent a letter refusing arbitration at the arbitration step, allowing the court to attach a statute of limitations accrual date. *Unisource*, 157 F.Supp.2d at 1083. In the instant case, Conoco never sent a letter refusing to arbitrate R05-14 at the third step. *Unisource* was also a much closer case for timeliness, the difference in dates between the formal rejection of arbitration during the grievance process, and the rejection following a formal request for arbitration was only a few days, but those few days would have been the difference between being inside or outside the statute of limitations. In this case, the Union delayed an entire year between filing for arbitration at step three and filing this lawsuit. The facts of *Bell Telephone* are completely different from this case, and the legal analysis is substantively identical to that of *Unisource*, which is addressed supra. *See* 2006 WL 3408409, *2.

previously denied the grievance and ignored the submission to arbitration, that this was a refusal to arbitrate or a break down of the grievance procedure.  Even if the Union is given an extra four and a half months (the time it took them to file their NLRB complaint in R03-01) before they are considered to have known that arbitration had been denied for R05-14, this law suit was untimely by nearly two and a half months.

Without authority from the Tenth Circuit on this issue, this Court concludes the Fifth Circuit's analysis in *Coca-Cola* better fits this case. In *Coca-Cola*, the Fifth Circuit held the employer's position that it would not arbitrate was clear and unequivocal, even though the employer had not used the term "arbitrate," and even though the union had argued to the company that arbitration was not ripe under the parties' grievance and arbitration procedure. *Coca-Cola*, 114 Fed. App'x. at 139, 141. Given the undisputed material facts surrounding R05-14, including the clear undisputed language of the R-CBA, this Court concludes Conoco was clear and unequivocal in its position that R05-14 would not proceed to arbitration, and that its correspondence with the Union sufficiently articulated its position.

The six-month statute of limitations accrued on the Union's receipt of the July 1, 2005, letter articulating that the grievance arose under Article 11 of the CBA.  Even under the Union's proposed rule, the grievance process must be viewed as having been exhausted on July 14, 2005, or having broken down at the latest some time in the four and a half months following July 14, 2005.  This action was not filed until July 14, 2006.  Thus, R05-14 is time barred under all proposed rules in this case.

**R03-14**

On August 5, 2003, Conoco denied the step one grievance request as "untimely," among other reasons.  In an August 15, 2003, letter responding to the Union's request to advance to step two of the grievance procedure, Conoco again denied the grievance stating "the grievance is not timely." (Dkt. #27, Exh. N, p.2, 4).  Grievances which were not timely raised at step one cannot begin the three step process, and thus are not arbitrable. (Dkt. #27, Exh. B, p.39; Dkt. #27, p.7, undisputed; *see* Dkt. #37).   Neither of Conoco's letters mentioned the term "arbitrate."   On September 5, 2003, the union sent a formal request to arbitrate at step three, and Conoco did not respond. (Dkt. #27, Exh. N).  The Union has submitted no evidence genuinely disputing Conoco's arguments and affidavit statements that Conoco never equivocated on its position. (See Dkt. #37). In letters dated June 7 and June 19, 2006, the Union acknowledged Conoco had denied arbitration on the basis of untimeliness. (Dkt. #37-3, p.2, 6).

When Conoco articulated its unwavering position that the grievance was untimely, its unequivocal refusal to arbitrate was clear. *See Coca-Cola*, 114 Fed.Appx. at 139, 141 ("We agree with the district court that when one party tells another that it has no viable cause of action because any claims that it might have had are now time-barred, that party has unequivocally refused to arbitrate," even though employer never used the term "arbitrate"). The employer does not need to use the term "arbitrate." *Coca-Cola*, 114 Fed.Appx. at 141 n.12 (quoting *In re Diamond D,* 15 F.Supp.2d at 289 ("Given the repeatedly stated public interest in a prompt resolution of labor disputes, this court believes that the unequivocal refusal standard does not turn on whether the party resisting arbitration . . . has uttered the magic words 'we refuse to arbitrate this dispute.'")).  If the grievance was untimely, it could not even begin the three step process, so it was not arbitrable. (Dkt. #27, p.7).  Thus, when Conoco communicated to the Union that the grievance was not timely, it was a clear refusal to arbitrate.

The Union's attempt to apply *Unisource* to R03-14 is also unavailing.  Even under the proposed *Unisource* rule, the Union cannot succeed in an argument that the grievance process was not exhausted.  If the initial grievance is not timely, the process cannot start. (Dkt. #27, p.7; *see* Dkt. #27, Exh. B, p.39).  Conoco's refusal to participate in the grievance process constituted a break down of the process to the detriment of the Union.  *See Unisource*, 157 F.Supp. 2d at 1082-83.  Conoco refused the grievance as untimely on August 5, 2003, almost three years before this action was filed.  Thus even if this Court accepts the proposed rule from *Unisource*, this action would be time barred.

The six-month statute of limitations accrued on the Union's receipt of the August 5, 2003, letter. The Union filed its Complaint on July 14, 2006. As such, R03-14 is time barred.

## CONCLUSION

WHEREFORE, Conoco's Motion for Summary Judgment (Dkt. # 27) is granted.

IT IS SO ORDERED this 15th day of October, 2010.


Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma